GREENWALD *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY.

[76 South. 557, Division B.]

1. EVIDENCE. *Judicial notice. Market for blooded hunting dogs.*
   The court officially knows that blue-blooded hunting dogs have a market.

2. DAMAGE. *Killing valuable dog on track. Instructions.*
   In a suit for damages for the negligent killing of a blooded pointer dog, where the evidence showed that there was no local market for such dogs, the court should have instructed the jury to fix the value of the dog at such sum as the evidence showed that a man who wanted to buy such a dog would be willing to pay for same; and to aid the jury in arriving at the value of the dog, the court should permit the jury to consider the testimony as to the values of such dogs in other places, wherein the owner might find a purchaser.

APPEAL from the circuit court of Claiborne county.
HON. E. L. BRIEN, Judge.

Suit by S. Greenwald against the Yazoo & Mississippi Valley Railroad Company. From an insufficient judgment, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*R. B. Anderson,* for appellant.

The court ruled out the testimony of Mr. Bearden as to the value of a dog, like that, in Tennessee. I think this was error because the dog could have been sold in Tennessee, and where there is no market for an article, it is going very far to say that its value in another locality is not admissible. Following that ruling by the court, the first instruction was to the effect that the value was to be determined by what the animal was worth at Pattison. I contend respectfully that this was not proper, because, since it appeared that there

was no market at Pattison, the value at any place where the dog could have been sold was material and admissible. The rule that the local market value controls refers only to such articles as have a market value. 13 Encyc. Evidence, p. 567.

However, while I submit that the ruling out of the testimony of the witness as to the value of dogs in Tennessee like this one, or rather, of the fact that he had seen dogs not as good as this one sell for two hundred dollars or two hundred and fifty dollars in Tennesee, and the giving of the first instruction to defendant, confining the proof of value to that particular locality (Pattison) and while it is probable that the jury, in fixing the value confined themselves to the value at Pattison (as they should have done under the first instruction given the defendant), and thus reached the remarkable verdict of five dollars, was erroneous and should reverse the case; it is most earnestly contended that the proof shows a much greater liability than the above nominal sum. Surely the fact that. Hynum sold two dogs for three dollars and seventy-five cents each should not fix the value of an animal Hynum had never seen and knew nothing about. Since a valuation of some two hundred and fifty dollars is placed on the dog by three witnesses for plaintiff, and a valuation of twenty-five dollars by two of defendant's witnesses (Middleton and Allen, and the only two who pretended to place any valuation on the dog), it is perfectly plain that the verdict was reached with no regard whatever as to what the proof showed.

A cow or a horse or a mule has a fixed value usually for its fitness for labor or with reference to its size or adaptability for human consumption, but a dog's value is governed almost entirely by its individual traits and usefulness for a particular purpose. The price paid to the witness, Hynum, and the ideas of Allen and Middleton, the two defense witnesses, who knew absolutely nothing about the dog in suit, could

not properly be permitted to reduce the value of the animal, and the judgment in this case is nothing short of an arbitrary and prejudiced and capricious dictum of the particular jury which tried the case.

It is respectfully submitted that in all justice a new trial should be had.

*Mayes, Wells, May & Sanders,* for appellee.

It is a well established rule that a verdict of a jury will not be disturbed unless it is manifest from the whole record that it was clearly wrong. *Kelly* v. *Miller,* 39 Miss. 17; *N. O. R. Co.* v. *Hurst,* 36 Miss. 660; *N. O. R. Co.* v. *Statham,* 42 Miss. 608; *Hill* v. *Railway,* 76 Miss. 587; *Railroad Co.* v. *Hurst,* 36 Miss. 660, 74 Am. Dec. 785; *Railroad Co.* v. *Whitfield,* 44 Miss. 466, 7 Am. Rep. 699; *Railroad Co.* v. *Caruth,* 51 Miss. 77.

If a verdict is supported by evidence, and the court cannot say the jury was unwarranted in reaching its conclusion, it will not be disturbed, although a finding for the opposite party would have been more satisfactory to the court. *Y. & C. R. Co.* v. *Williams,* 67 Miss. 18; *Kansas City, etc., R. Co.* v. *Cantrell,* 70 Miss. 329; *Woodem* v. *Owens,* 12 So. (Miss.) 207; *Waul* v. *Kirkman,* 13 S. & M. (Miss.) 599.

In determining the amount of recovery for the loss of a dog which has no market value, the facts and circumstances of the particular case in hand are important, and the jury in this case were the sole judges of the value. The dog had no special or pecuniary value to the owner manifestly as he never hunted with it but a few times, and it was valuable, if at all, for no other purpose. It performed no special services for the owner and was wild and insufficiently trained, and there was no measure of damages in the case except the exercise of common sense of the jury with the facts and circumstances before them. The verdict should not be disturbed, and the judgment of the lower court should be affirmed.

COOK, P. J., delivered the opinion of the court.

Appellant sued the appellee for the value of a pointer dog killed by one of the locomotives of appellee near the depot at Pattison, in Claiborne county. The facts as disclosed by the record, are that the dog got on the track from one hundred to one hundred fifty yards in front of the approaching locomotive, and then ran slowly down the track until it was overtaken by the locomotive and killed. It is evident that the engineer did not see the dog at all, and that he has no recollection as to what he was doing at the time; he, manifestly, was testifying about his custom, and had no independent recollection of this occasion. Some effort was made to have the engineer testify that he did not see the dog because he had his eyes on the semaphore, but this was without results.

All of the pertinent evidence fixed the value of the dog at from two hundred dollars to two hundred and fifty dollars—that is to say, the witnesses who knew the qualities and breeding of the dog testified that way. The evidence shows that there was no market for dogs of this kind in Pattison, and the court by instructions limited the finding to the market value of dogs in Pattison, and excluded evidence offered of the value of dogs of this kind in adjoining states. It being that Pattison was not a dog market, and that pointer dogs had no market there, the jury followed the instructions of the court by fixing the value of the dog at the nominal sum of $5. There are, perhaps, towns even in this state wherein there is no market for cotton, and in a suit involving the value of a bale of cotton, would the court be justified in instructing the jury that in determining the value of a bale of cotton the jury were confined to the market value in a town where there was no market for cotton?

We think the court may judicially know that blue-blooded hunting dogs have a market, and in this case

the court should have instructed the jury to fix the value of the dog in question at such sum as the evidence shows that a man who wanted to buy a dog like this one would be willing to pay for same; and to aid the jury in arriving at the value of the dog in this case, the court should have permitted the jury to consider the testimony as to the value of such dogs in other places, wherein the owner might find a purchaser.

*Reversed and remanded.*